701 So.2d 1001 (1997)
STATE of Louisiana, Appellee,
v.
Jackie IGNOT, Appellant.
Nos. 29745-KA, 29746-KA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1997.
*1005 Louisiana Appellate Project by Richard J. Gallot, Jr., Ruston, for Appellant.
Richard Ieyoub, Attorney General, William R. Coenen, Jr., District Attorney, Johnny R. Boothe, Assistant District Attorney, for Appellee.
Before NORRIS, BROWN and GASKINS, JJ.
GASKINS, Judge.
After a jury trial, the defendant, Jackie Ignot, was convicted of one count of unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4. He was subsequently adjudicated a third felony offender with a prior crime of violence under La. R.S. 15:529.1 and sentenced to the mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence. He appeals, urging 12 assignments of error. We affirm.

*1006 FACTS
At about 2:00 a.m. on April 27, 1996, the defendant drove a brown 1981 Oldsmobile station wagon up to a street corner in Winnsboro where Gladys Ross was standing with some friends. Ms. Ross asked the defendant for a ride to her home, and the defendant agreed. The defendant, Ms. Ross, and Harry McCall, another passenger, drove away.
After dropping off Mr. McCall at his residence, the defendant began to drive Ms. Ross home. At that point, Winnsboro Police Officer John McCarthy pulled in behind the vehicle. The officer initially noticed that the car was drifting in and out of its lane. He also observed its personalized license plate, "Tater-1." Recognizing the plate and the vehicle as belonging to a local sweet potato farmer and not the defendant, the officer turned on his emergency lights, signaling for the defendant to stop. Ms. Ross testified that the defendant refused to stop, declaring that he "was going to outrun the son-of-a-bitch." The defendant sped down the street and made evasive maneuvers. However, he hit a tree and then crashed the station wagon into a parked flatbed truck. Before running from the car, the defendant told Ms. Ross that he was leaving her to take the blame for the incident.
Officer McCarthy saw the defendant briefly as he fled the scene. Although Ms. Ross did not know the defendant's name, she subsequently identified him in a photo lineup. On April 28, 1996, Corporal Dennis Wollerson and Officer McCarthy located the defendant riding a bicycle south of town. The defendant was arrested and charged with careless operation, flight from an officer, and resisting arrest. He was also charged with stealing the bicycle he was riding when he was arrested. After the police established that the defendant had taken the station wagon without permission, he was subsequently charged with unauthorized use of a movable valued in excess of $1,000, La. R.S. 14:68(B). This charge was amended to unauthorized use of a motor vehicle, La. R.S. 14:68.4. A jury convicted him as charged.
Following the defendant's conviction for unauthorized use of a motor vehicle, the state filed a habitual offender bill against him. The bill asserted that he had three prior felony convictions: manslaughter, 1/12/83; unauthorized use of a movable, 4/7/95; and public intimidation, 4/23/96. At the habitual offender hearing, the state informed the court that it would not be offering proof of the public intimidation conviction.
As proof of the remaining charges, the state introduced evidence that a "Jackie Ignont" pled guilty to manslaughter in 1983 and was sentenced to 17 years imprisonment at hard labor.[1] A certified copy of the minutes of court pertinent to that conviction was entered into the record. Franklin Parish Sheriff Steven Pylant and Probation and Parole Officer Rod Williams testified that the defendant was the same person as the "Jackie Ignont" who pled guilty to this offense. A copy of the Boykin colloquy for this offense was also introduced. The colloquy is thorough and shows a waiver of all the rights guaranteed in Boykin. The defendant's attorney for that conviction, Donnie Ellerman, testified that he had no reason to believe that the defendant's manslaughter plea was anything other than voluntary.
As to the manslaughter sentence, Officer Williams testified that the defendant was paroled on January 25, 1988. However, his parole was revoked on January 25, 1989, due to a new misdemeanor conviction. He was later released from DOC supervision to a halfway house in September 1992, where he continued to serve his sentence.
The state introduced a certified copy of a minute entry from the Franklin Parish District Court from April 7, 1995 showing that one "Jackie Ignont" pled guilty to unauthorized use of a movable. A Boykin transcript was also introduced which demonstrates that the defendant was made aware of his rights and waived them. Sheriff Pylant identified the defendant as the person convicted in that proceeding. The defendant's attorney for that offense, James Stephens, testified he *1007 negotiated a plea agreement on this charge and denied telling the defendant that he was pleading to a misdemeanor rather than a felony.
The defendant was informed by the court on the record at the habitual offender arraignment that he had the right not to testify against himself at the hearing. Nevertheless, he elected to testify at the hearing and admitted that he was the person who pled guilty to the charges in the habitual offender bill.
In his testimony, the defendant attacked his prior manslaughter plea on the basis that his attorney had never explained his rights to him and that someone named Houston Seymour had advised him to plead guilty because Louisiana had "no self-defense law." The defendant also said that he had not signed a written plea bargain agreement for the manslaughter, even though that document bore what purported to be his signature.[2] The defendant also admitted that his manslaughter parole was revoked on January 25, 1989.
Ignot attacked his 1995 unauthorized use conviction by testifying that his attorney never visited him at the jail and that he had complained to the bar association about this. The defendant testified that he pled guilty because he had been in jail for a year with no contact from his attorney and Mr. Stephens told him that the only way he could get out of jail was to plead guilty. He pled guilty, was sentenced to time already served, and released the same day. The defendant said that he understood this plea to be a misdemeanor, not a felony; he declared that had he known it was a felony he would not have accepted the plea bargain.
Based upon all this evidence, the court adjudicated the defendant a third felony offender. Because manslaughter is a crime of violence listed in La. R.S. 14:2(13), the court imposed the mandatory life-without-benefits sentence stipulated by La. R.S. 15:529.1(A)(1)(b)(ii). The defendant's subsequent motion to reconsider sentence was denied.
On appeal, the defendant urges 12 assignments of error. One assignment of error, pertaining to a motion for new trial, was expressly abandoned in brief. For purposes of our review, the remaining assignments may be divided into six general categories for discussion.

OTHER CRIMES EVIDENCE AND MOTION TO DISMISS
These two assignments, which complain of the introduction of other crime evidence and the denial of a motion to dismiss, were submitted without argument. Merely restating an assignment of error, without argument or citation of authority, is insufficient to preserve a matter for review on appeal under URCA 2-12.4. State v. Hattaway, 28,060 (La.App.2d Cir. 5/08/96), 674 So.2d 380, 389, writ denied, 96-1900 (La.1/10/97), 685 So.2d 141. Consequently, they will not be considered.[3]

EXCESSIVE SENTENCE
In four assignments of error, the defendant attacks his sentence, contending that the mandatory life sentence stipulated by La. R.S. 15:529.1 is cruel, unusual and excessive.
La. R.S. 15:529.1 provides, in pertinent part:
A. (1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:

*1008 (b)(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) ... or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
One of the defendant's prior offenses was manslaughter, and La. R.S. 14:2(13)(d) stipulates that manslaughter is a crime of violence.
In his first argument, the defendant contends that the trial court failed to articulate sufficient reasons to justify the life sentence. However, the sentence imposed was the mandatory statutory sentence. In State v. Rose, 606 So.2d 845, 854 (La.App. 2d Cir. 1992), when addressing the trial court's lack of discretion in imposing a mandatory sentence for second degree murder, this court stated:
It would be a useless act for the judge to articulate reasons for imposing sentence when he has no choice but to impose a statutorily-mandated maximum penalty.
A similar rationale may be applied to the instant case dealing with a mandatory sentence under the Habitual Offender Law.
Next, the defendant argues that the mandatory life sentence was excessive and the trial court erred in not imposing a lesser sentence. In support of his position, the defendant cites State v. Dorthey, 623 So.2d 1276 (La.1993), in which the Louisiana Supreme Court held a trial judge has the authority to reduce an offender's sentence below the mandatory minimum whenever the court finds that the sentence makes no measurable contribution to acceptable goals of punishment or that the sentence was the purposeful imposition of pain and suffering or was grossly out of proportion to the severity of the crime.
However, declaring a given sentence under the Habitual Offender Law unconstitutionally excessive should be the rare act, not a common place practice. State v. Dorthey, 623 So.2d at 1281 (Marcus, J., concurring); State v. Lacoste, 97-1113 (La.App. 4th Cir. 5/30/97), 695 So.2d 1121. In a series of per curiam decisions, the Louisiana Supreme Court remanded cases wherein the trial courts had imposed sentences which were less than the statutory minimum with instructions for the trial courts to justify those sentences. In his concurrence in each of these cases, Chief Justice Calogero noted that the authority set forth in the Dorthey case was to be used in "relatively rare cases" and that it did not purport to grant a district court the power to usurp the legislative prerogative to prescribe punishments. See State v. Webster, 95-2484 (La.2/2/96), 666 So.2d 654; State v. Hamilton, 95-2462 (La.2/2/96), 666 So.2d 655; and State v. Kelly, 95-2335 (La.2/2/96), 666 So.2d 1082.
A review of the defendant's extensive criminal record reveals that he has continuously violated the law all of his life. He committed manslaughter in 1982 at the age of 17 and was released from prison on parole in January 1988. In September of 1988, he committed unauthorized use of a movable and resisting arrest by flight; these convictions caused Ignot's parole to be revoked in January 1989, and he was released to a halfway house in September 1992.
In August 1993, Ignot was arrested for disturbing the peace and one month later was charged with theft and trespassing; he was convicted of all of these offenses. The theft conviction carried a sentence of two years imprisonment in the parish jail. In December 1993, Ignot was charged (without disposition) with bribery, resisting an officer and disturbing the peace. Further undisposed charges of stalking, trespassing and disturbing the peace were brought in January 1994. In March 1994, Ignot was charged with auto theft; in April 1995, he pled guilty to the amended charge of unauthorized use of a movable and received a sentence of two years imprisonment in the parish jail. In October 1994, Ignot was charged with simple battery without disposition. In April 1995, Ignot was charged with possession of a firearm by a convicted felon, public intimidation, resisting an officer, aggravated assault, criminal damage to property and disturbing the peace. The firearms possession and criminal damage to property charges were undisposed. *1009 Ignot received a sentence of two years imprisonment, consecutive to any other, for the public intimidation conviction and concurrent sentences of six months imprisonment in the parish jail for the remaining convictions.
The defendant was released from custody on April 23, 1996 and committed the instant crime on April 27, 1996. During the commission of this crime, he lead police on a high-speed chase through city streets while carrying an innocent passenger. After the defendant wrecked the stolen vehicle, causing $1,203.33 in damage, he fled from police and was subsequently arrested while riding a bicycle he had stolen.
According to the pre-sentence investigation (PSI) report, the defendant has a fourth-grade education and has never been employed for any substantial length of time. He was well known to the law enforcement officers around his home and has a poor reputation there. The police chief in Wisner, Louisiana, noted that the defendant's mother had a total disregard for the welfare of the defendant when he was a child. A sheriff's deputy who attempted to arrest Ignot in April 1995, for disturbing the peace related that he (the deputy) had to flee for his life during the encounter because one of the defendant's friends gave Ignot a pistol as the deputy tried to arrest the defendant.
After carefully reviewing the entire record and the defendant's PSI report, this court finds that the defendant's sentence is not cruel, unusual or excessive. For the nearly 15 years of his adult life, the defendant has failed to live for even a few months out of state supervision without committing a crime. Finally, the defendant committed the crime sub judice a mere four days after he was released from custody for his prior offenses. Judging from his prior record, there is little doubt that the defendant would continue to commit serious crimes if released from custody. The defendant's flagrant and literally incessant criminal behavior makes him a danger to the citizens of Louisiana. Thus, we cannot find that the mandatory sentence of life imprisonment is excessive for this defendant.[4]
These assignments of error are meritless.

PREDICATE OFFENSES
In two assignments of error, the defendant contends that the trial court erred in failing to quash the multiple offender bill and in overruling his objections to the multiple offender bill. Specifically, he attacks the two predicate offenses.

Manslaughter Conviction
The defendant argues that the "cleansing period" under La.R.S. 15:529.1(C) had elapsed on his manslaughter conviction before the commission of the crime in the case sub judice (April 27, 1996) and that his sentence could not be enhanced as an habitual offender based upon that crime. The defendant correctly notes that between 1988 (the year he claims he was released from custody) and 1994 (the year the period was first changed), La. R.S. 15:529.1(C) provided that convictions more than five years old could not be used for enhancement of sentences under the Habitual Offender Law.[5] From this fact, he argues that his manslaughter conviction was thus "cleansed" from his record for habitual offender purposes after he had five felony-free years subsequent to his alleged release in January 1988.
First, the defendant claims in brief that he was released from custody on his manslaughter conviction on January 25, 1988. However, the record does not support this assertion. To the contrary, the testimony of both the defendant and his parole officer established that the defendant was actually released on parole in January 1988, then had his parole revoked due to his commission of a misdemeanor crime, and was finally released from DOC supervision in September 1992. He committed his next felony in 1995 and the *1010 instant crime in 1996. The relevant year for habitual offender purposes is 1995 (the year of his next felony), not 1996 as the defendant argues; however, the defendant committed both of these subsequent felonies within five years of the expiration of his manslaughter sentence. Therefore, even assuming that the relevant cleansing period was five years, the defendant would not qualify for its benefits.
However, we find that the cleansing period applicable to the defendant's case was 10 years, the term specified in the statute at the time of the instant offense. The Habitual Offender Law operates to enhance the punishment for the offender's commission of the felony for which he has been charged as an habitual offenderin this case, the 1996 unauthorized use of a motor vehicle conviction. It does not enhance the punishment for one of the prior felonies used as the basis for the habitual offender bill. See Nichols v. United States, 511 U.S. 738, 747, 114 S.Ct. 1921, 1927, 128 L.Ed.2d 745 (1994). Because the habitual offender sentence is to be imposed only for the crime considered the "subsequent felony" in La. R.S. 15:529.1(A)(1), the date of the commission of that felony is the starting point for the calculation of the cleansing period; one then counts backwards from that date. Because the defendant committed the felony sub judice in 1996, the cleansing period effective at that time10 yearsis the applicable law.
For an analogous situation, we look to the "cleansing period" in the DWI laws for multiple offenders. In State v. Rolen, 95-0347 (La.09/15/95), 662 So.2d 446, our supreme court rejected an argument similar to that made by the defendant in the present case:
[Unlike statutes of limitation,] [c]leansing periods are ... purely statutory rules constituting self-imposed restraints on the state's plenary power to define and punish crimes. Due process does not require them and several Louisiana repeat offender statutes do not have them. See State v. Williams, 502 So.2d 1388 (La.1987) (repeat possessory marijuana offenses under La. R.S. 40:966(D)); State v. Forrest, 439 So.2d 404 (La.1983) (repeat prostitution offenses under La.R.S. 14:82). Enlarging or even eliminating a statutory cleansing period does not require an individual to defend his past acts charged against him, for which he has already been convicted and punished, but to measure his future conduct in light of the legislature's changing perception of significant social problems. (Emphasis theirs.)
The Habitual Offender Law, like the DWI law, is a caution for past felony offenders that future felony offenses will carry harsher punishment. As is also the case with repeat DWI offenders, the legislature has decided that habitual felony offenders pose a threat to our society. The defendant did not have 10 felony-free years before committing the present offense.

Unauthorized use of a movable
The defendant also argues that his conviction for unauthorized use of a movable should not have been used to enhance his sentence because his guilty plea was not voluntarily entered. Specifically, he argues that his attorney, Jim Stephens, told him that this crime was not a felony offense. This contention was thoroughly considered and rejected at the habitual offender hearing. Mr. Stephens testified that he never informed the defendant that this crime was not a felony offense. Moreover, the Boykin colloquy from that offense was thorough and the defendant indicated that he had been informed of the nature of the charges against him. Indeed, the court read the statute and the possible penalties to the defendant. As the state points out in brief, La. R.S. 15:529.1(D)(1)(b) provides, in pertinent part:
If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance *1011 of the evidence, on any issue of fact raised by the response.
In light of the testimony of Mr. Stephens directly contradicting the defendant's claim and the lack of other evidence supporting the defendant's assertion, this court cannot say that the trial court erred in finding that the defendant was adequately informed of the nature of the charge against him before pleading guilty.
The defendant also complains that the Boykin examination did not set forth a factual basis for the charge. However, as the state correctly notes, the absence of a factual basis from this plea is irrelevant because the defendant did not protest his innocence. State v. Orozco, 609 So.2d 1043 (La. App. 2d Cir.1992).
These assignments of error are without merit.

RELEASE DATES
By this assignment of error, defendant argues that the trial court should have "dismissed" the habitual offender proceedings because the state offered inadequate proof of the dates when the defendant was released from custody for his prior offenses. Or, put another, way, the defendant contends that the state failed to prove the "cleansing period" set forth in La. R.S. 15:529.1(C).
In an habitual offender proceeding, the state bears the burden of proving that the applicable "cleansing period" has not expired between adjacent offenses. State v. Boykin, 29,141 (La.App.2d Cir. 1/31/97), 688 So.2d 1250. Whenever the adjacent offenses were not both committed within the applicable cleansing period, the state must prove that the cleansing period had not expired between the defendant's date of discharge on the previous offense and the date of commission of the subsequent offense. State v. Mayweather, 28,271 (La.App.2d Cir. 6/26/96), 677 So.2d 594. As determined supra, the applicable cleansing period in the instant case was 10 years. See La. R.S. 15:529.1(C).
The defendant was convicted of manslaughter on January 12, 1983 and was sentenced to serve 17 years imprisonment. The next felony in the habitual offender bill of information was unauthorized use of a movable; this crime occurred on or about March 18, 1994, and the conviction was entered on April 7, 1995. Because the defendant committed the second crime (March 18, 1994) more than 10 years after he was convicted of manslaughter (January 12, 1983), the state was required to prove that the cleansing period had not expired.
The defendant's parole officer testified that the defendant was paroled on the manslaughter conviction in January 1988. Because of a new misdemeanor conviction, however, Ignot's parole was revoked in January 1989, and he was released from DOC custody to a "halfway house" in September 1992. The date of discharge from parole supervision is the relevant date. State v. Vincent, 387 So.2d 1097 (La.1980). Because the defendant was released from DOC custody less than 10 years before the 1994 offense, it is clear that the state met its burden of proof.
On April 7, 1995, the defendant was sentenced to serve two years in the parish jail for unauthorized use of a movable. The discharge date for this offense is less certain. Franklin Parish Sheriff Steve Pylant testified that the defendant was in custody from April 23, 1995 to April 23, 1996. However, the sheriff's testimony was unclear as to whether this period of incarceration was for the unauthorized use of a movable conviction, Ignot's public intimidation conviction, or both. When the prosecutor asked the sheriff whether these sentences were run concurrently, the sheriff answered by saying that the defendant was arrested for unauthorized use five days after he was released; this answer obviously pertained to his arrest for the instant crime. At one point, the state said that their proof of any period of incarceration (not just the offenses listed in the habitual bill) was intended to show that the cleansing period was interrupted. See State v. Warner, 91-1387 (La.App. 1st. Cir.6/24/94), 638 So.2d 1160.
At the close of the state's case, defendant requested that the habitual offender "charges" be "dropped" because the state *1012 failed to prove when the defendant was released from custody on the 1995 unauthorized use conviction.[6] The court denied the motion and stated that it was going to compute the relevant dates independently. On appeal, the defendant argues that this was error.
The conviction for unauthorized use of a movable was entered on April 7, 1995. He committed the next felonythe case sub judice on April 27, 1996. Because the earlier conviction occurred less than 10 years before the commission of the subsequent offense, it is impossible that the cleansing period could have elapsed. Mayweather, supra; State v. Falgout, 575 So.2d 456 (La.App. 4th Cir. 1991); State v. Gamberella, 633 So.2d 595 (La.App. 1st Cir.1993), writ denied, 94-0200 (La.6/24/94), 640 So.2d 1341. The confusion about the date of release on the 1995 unauthorized use is of no moment. Therefore, the state carried its burden of proof with regard to the cleansing period.
This assignment of error is without merit.

MITIGATING FACTORS
The defendant contends that the trial court erred by refusing to allow him to present mitigating factors concerning his manslaughter conviction. He argues that the trial court had an affirmative duty to consider all relevant facts before imposing a life sentence. The state disagrees, asserting that the court was aware of the mitigating factors from the defendant's answer to the habitual offender bill and that the only relevant determination to be made at the habitual offender hearing is the truth of the allegations in the bill.
Defendants are entitled to attack the validity of their previous convictions at a multiple offender hearing, but the scope of that attack is not so broad as the defendant urged at the hearing. In State v. Shelton, 621 So.2d 769, 779-780, (La.1993), the supreme court set forth the scheme for assigning the burden of proof in habitual offender proceedings:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. [Footnote omitted.] If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, ... the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
In the instant case, the state introduced a perfect transcript of the Boykin proceedings for the manslaughter. Although no factual basis was recited during the colloquy, it was not an Alford plea, and the defendant's attorney stated that, in his opinion, Ignot had no meritorious defenses to raise. When, at the multiple offender hearing, the defendant attempted to attack the conviction by arguing the facts of the case, he was not offering proof of an "infringement of his rights" or an "irregularity in the taking of the plea," as contemplated by Shelton, but rather was attempting to offer evidence to show that his culpability for that offense was not great. This sort of evidence would, in some circumstances, be relevant for sentencing purposes but it is insufficient to "go behind" a perfect Boykin transcript containing no irregularities.
*1013 Therefore, this assignment of error is without merit.

AMENDMENT OF BILL OF INFORMATION
The defendant was originally charged by bill of information with violating La. R.S. 14:68(B), unauthorized use of a movable with a value greater than $1,000. The precise language used in the bill of information was:
On or about April 27, 1996 the defendant(s), Jackie Ignot, committed unauthorized use of movable by taking a vehicle, belonging to William Brown McLemore Jr., of a value greater than one thousand dollars in violation of L.R.S. 14:68-B.
In open court before the first prospective juror was called for examination, the state requested leave of court to amend the bill to charge the defendant with unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4. Defense counsel objected by stating:
Yes, Your Honor, we object to them amending the Bill this late.
The court permitted the amendment, and defense counsel said:
I'd like to reserve a right to appeal on that, Your Honor.
Counsel made no other objections or comments on the issue. The amended bill of information charged:
On or about April 27, 1996 the defendant(s), Jackie Ignot, committed unauthorized use of a motor vehicle, belonging to William Brown McLemore Jr., in violation of L.R.S. 14:68.4
On appeal, defendant argues that the trial court erred by permitting the amendment and by failing to arraign the defendant on the amended bill of information. The state argues that the amendment was proper and non-prejudicial and that the defendant did not object to the court's failure to rearraign him.

Amendment
The substance of an indictment may be amended before trial begins. La. C.Cr.P. art. 487. In a jury trial, trial begins when the first prospective juror is called for examination. La.C.Cr.P. art. 761. In State v. Johnson, 93-0394 (La. 6/3/94), 637 So.2d 1033, the supreme court set out the law on the amendment of a bill of information:
La. Const.1974, Art. I, Sec. 13 provides that "[i]n a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him." This requirement protects the accused's right to prepare a defense and exercise fully his rights of confrontation and cross-examination. State v. Germain, 433 So.2d 110 (La.1983). The bill of information must therefore inform the defendant of the nature and cause of the accusation against him in sufficient detail to allow him to prepare for trial, as well as to allow the court to determine the admissibility of the evidence. State v. Marcal, 388 So.2d 656 (La.1980); State v. Meunier, 354 So.2d 535 (La.1978). Accordingly, the state may not substantively amend a bill of information to charge a new offense once trial has begun. La. C. Cr. P. art. 487; Cf., State v. Roberts, 319 So.2d 317, 320 (La.1975), rev'd on other grounds, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), on remand, 340 So.2d 263; State v. Bluain, 315 So.2d 749 (La.1975).
If a defendant can show that he has been prejudiced by the amendment to the charge against him, he is entitled to a continuance. La.C.Cr.P. art. 489. The purpose of the continuance authorized by La.C.Cr.P. art. 489 is to protect a defendant from surprise or prejudice which may result from such an amendment. The defendant bears the burden of proving that he has been prejudiced by the amendment. The trial court has great discretion in deciding such matters, and its ruling will not be disturbed on appeal absent an abuse of that discretion. State v. Cleveland, 25,628 (La.App.2d Cir. 1/19/94), 630 So.2d 1365.
In this case, the state requested the amendment before the first prospective juror was called. Therefore, they were entitled to amend the bill. The defendant's remedy for any potential prejudice was a motion for a continuance, not an objection to the amendment. However, the defendant did not request a continuance.
*1014 Even if he had requested a continuance and been refused, the defendant has failed to demonstrate that his defense was prejudiced as a result of the amendment of the bill. Comparison of the language of the original bill with that in the amended bill reveals that the charging instrument clearly set forth the acts which formed the basis for the charge. The defendant knew that he was to be tried for the unauthorized use of Mr. McLemore's car; there was no element of surprise. Moreover, the two crimes in question here are nearly identical; the only difference is that the amendment relieved the state of proving the value of the automobile. On this record, there is an insufficient showing of prejudice to merit reversal.

Arraignment
As the state points out in brief, the defendant objected to the amendment to the bill, not to the court's failure to rearraign him. La.C.Cr.P. art. 555 provides:
Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty. (Emphasis added)
Because the defendant did not object to the failure to arraign him on the amended charge, the issue is waived.
This assignment of error is without merit.

ERROR PATENT
In sentencing the defendant, the trial court failed to give the defendant credit toward his sentence for time he had already served in custody. This failure would have been error patent prior to the 1997 amendment of La.C.Cr.P. art. 880 and would have been corrected by an order to amend sentence to reflect credit for time served. However, the amendment of La.C.Cr.P. art. 880 is designed to make the credit for prior custody self-operating even on a silent record. Therefore, the statute does not require this court to take action.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Although the defendant's last name is spelled "Ignont" in a number of court documents, the defendant spells his name "Ignot."
[2] Mr. Ellerman, his attorney on this charge, had no independent memory of the defendant signing the document. However, he testified emphatically that he had never presented a plea bargain agreement for a defendant that had not been signed by that defendant.
[3] On the other crimes evidence issue, we note that three of the four crimes complained of (careless operation, resisting arrest, and flight from an officer) were properly admissible as an "integral part of the act or transaction" of the present offense. See La. C.E. art. 404(B). The other crime, bicycle theft, was arguably part of the defendant's continuing flight from the police. Without argument on the issue, however, it is impossible to know the basis of the defendant's complaint or whether that complaint bears any relation to any possible prejudice that evidence might have created.
[4] The defendant also asserts in his list of assigned errors that the Habitual Offender Law is unconstitutional. However, he presented no argument in support of this proposition. Accordingly, we will not consider the issue.
[5] The period was increased from five to seven years in 1994, then from seven to 10 years in 1995.
[6] The defendant later testified that he was released from custody on the 1995 unauthorized use conviction on the day he pled guilty, April 7, 1995; he said that he had already served more than a year in jail waiting for his case to be heard.