| TRAYLOR, Judge Pro Tempore.
Defendant, Marlon Washington (‘Washington”), was convicted of two counts of illegal use of a firearm, one count of aggravated burglary and one count of attempted aggravated burglary. He was adjudicated a fourth felony offender, and on the first count of illegal use of a firearm, sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. On the second count of illegal use of a firearm, he was sentenced to fifteen years at hard labor without benefit of probation, parole or suspension of sentence. On the charge of aggravated burglary, he was sentenced to fifteen years at hard labor, and on the charge of attempted aggravated burglary, he was sentenced to ten years at hard labor. These sentences were ordered to run concurrently. Washington now appeals the multiple-offender conviction and the sentences. We affirm.
FACTS
Washington and the victim, Rosalind Johnson (“Johnson”), had dated, but separated just prior to the evening of February 18, 2000. On the evening of February 18th, Washington went to Johnson’s home armed with at least one firearm. Johnson was in the yard of her home. Washington confronted her about their broken relationship, then shot her twice, once in the leg and once in the arm. Johnson crawled into her vehicle in an attempt to find safety. Washington then broke through the front door of Johnson’s home and shot a Johnson family friend, Meuril Sellers (“Sellers”), once in the side of his chest. Washington left Johnson’s home to again threaten the injured Johnson who was still in her vehicle. He then went back into | ¡Johnson’s home where he again attempted to shoot Sellers, but his gun only clicked and did not fire.
When Johnson saw Washington reenter her home, she left her vehicle and fled to a next-door neighbor’s house where she hid in a back bathroom. Washington followed her into the neighbor’s house with the stated purpose of killing her. The neighbors refused to allow Washington into the back of their house, telling him that Johnson had departed. Washington fled the scene, but was arrested shortly thereafter with several firearms in his possession. Johnson and Sellers survived their wounds.
Washington was charged with two counts of illegal use of a firearm and two counts of aggravated burglary, one for each of the homes he entered. The jury found him guilty as charged of the two counts of illegal use of a firearm and the aggravated burglary of the Johnson home. As to the entry into Johnson’s neighbor’s home, the jury found Washington guilty of the responsive verdict of attempted aggravated burglary.
*1208 Thereafter, the state filed an habitual offender bill of information, alleging Washington to be a fourth felony offender. The first conviction was a September 22, 1986 guilty plea to simple burglary. Washington received a three-year hard labor sentence that was suspended, and he was placed on five years’ active probation which was revoked on May 26, 1989.[1] The second conviction was an April 23, 1991 guilty plea to simple burglary for which Washington received a three-year hard labor sentence. The third |,-¡conviction was an October 5,1995 guilty plea to illegal use of a weapon for which Washington received a one-year hard labor sentence. The fourth conviction included one of the February 18, 2001 illegal use of a weapon in a crime of violence charges of which Washington was convicted on August 9, 2001. Washington pled “not guilty” to the habitual offender bill of information and did not file any objections to it.
The multiple offender hearing was held on May 24, 2002. The state proved that Washington was the person convicted of the prior felonies. Expert testimony established him to be the individual in the prior convictions based on his fingerprints on the bills of information. The trial court found Washington to be a fourth felony offender and sentenced him to life imprisonment without benefit of probation, parole or suspension of sentence on the illegal use of a weapon conviction included in the habitual offender bill of information. As to the second conviction for illegal use of a firearm, the trial court sentenced Washington to fifteen years at hard labor without benefit of probation, parole or suspension of sentence. On the aggravated burglary conviction, the trial court sentenced Washington to fifteen years at hard labor. On the attempted aggravated burglary conviction, the trial court sentenced him to ten years at hard labor. These sentences were ordered to run concurrent with one another. Washington filed a motion to reconsider his sentence which was denied by the trial court.
UDISCUSSION
As to assignment of error number one, Washington makes two arguments regarding the allegedly defective fourth felony offender adjudication. First, he argues that the state only introduced the minutes of his guilty pleas, and, in particular, that the minutes of the October 5, 1995 conviction for illegal use of a weapon were insufficient to establish that he was properly advised of his rights per Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Second, he argues that the state failed to meet its burden of proving that the ten-year cleansing period had not lapsed on the 1986 conviction.
In State v. Jeffers, 623 So.2d 882 (La.App. 2d Cir.1993), we stated:
Where ... a prior conviction resulted from a guilty plea, the state must present a record made contemporaneously with the acceptance of that plea showing that defendant effectively waived his rights pursuant to Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). State v. Baker, 471 So.2d 945 (La.App. 2d Cir.1985); State v. Collins, 546 So.2d 1246 (La.App. 1st Cir.1989), writ denied, 558 So.2d 599 (La.1990). Although the prosecution here introduced certified copies of court minutes from both of the previous proceedings, those documents reveal only that ‘the court informed the defendant of his constitutional rights as per Boykin v. *1209 Alabama.’ This statement, standing alone, does not sufficiently demonstrate an explanation and waiver of defendant’s constitutional rights. Accordingly, the presented minute entries do not suffice to meet the state’s burden of proof. Cf. State v. Jones, 516 So.2d 396 (La.App. 5th Cir.1987).
In this instance, the court minutes reflecting Washington’s guilty plea on October 5,1995 read as follows:
THE ACCUSED, PRESENT IN COURT WITH COUNSEL, ROSS OWEN, THE STATE FILED A BILL OF INFORMATION. THE ACCUSED WAIVED ARRAIGNMENT AND PLED GUILTY TO THE CHARGE. THE COURT INFORMED THE DEFENDANT OF HIS | ,,iCONSTITUTIONAL RIGHTS AS PER BOYKIN VS. ALABAMA (SEE COURT REPORTER’S TRANSCRIPT). WHEREUPON, THE DEFENDANT WAS SENTENCED TO BE CONFINED AT HARD LABOR FOR A PERIOD OF ONE (1) YEAR, AND COMMITTED TO THE LOUISIANA DEPARTMENT OF CORRECTIONS, SUBJECT TO THE CONDITIONS PROVIDED BY LAW. THE COURT ORDERED THE DEFENDANT BE GIVEN CREDIT FOR TIME SERVED. THE SENTENCE IMPOSED WAS AN AGREED SENTENCE. (JUDGE BRYSON). (Emphasis added).
Washington’s counsel argues that since Washington was not provided a transcript of the October 5, 1995 guilty plea requested in discovery and he subsequently filed a motion to quash the fourth felony habitual offender bill of information, the guilty plea was somehow infirm.
Our review of the record indicates that when the district attorney filed the fourth felony habitual offender bill of information on October 31, 2001, counsel for Washington responded immediately on November 2, 2001 with a motion for discovery requesting a copy of the court minutes and guilty plea transcripts for all prior felony convictions. The state provided the court minutes of all three felony convictions, but provided the guilty plea transcripts of only two of those convictions. It did not provide the transcript of the October 5, 1995 guilty plea to illegal use of a weapon.
On January 30, 2002, however, the court minutes reflect that the court deemed all discovery requests satisfied. Subsequently, on April 2, 2002, Washington filed a motion to quash the fourth felony habitual offender bill on grounds that the state could not show that the guilty plea was properly taken in compliance with Boykin.
LOn April 19, 2002, Washington then filed a pro se motion for production of documents of all the proceedings transcribed in this case.
On May 9, 2002, the court minute entry states that the state filed an amended fourth felony habitual offender bill. The new bill alleges the same three prior felonies as the first bill with a hand-corrected date. The entry further reads:
THE ACCUSED WAIVED ARRAIGNMENT AND PLED NOT GUILTY TO THE CHARGE. COUNSEL FOR THE ACCUSED WITHDREW THE MOTION TO QUASH FOURTH FELONY HABITUAL OFFENDER BILL OF INFORMATION.
The record is silent as to why the motion to quash was withdrawn. There is no transcript of this proceeding in the record. However, on May 24, 2002, at the multiple offender hearing, the state filed a supplemental discovery response consisting of the court minutes and guilty plea transcript of an additional felony conviction of *1210 Washington on January 19, 2000 for a charge of felony theft.
At this hearing, in addition to other exhibits, the state offered into evidence state’s Exhibits S-l and S-2. Exhibit S-l was a bill of information showing that Marlon Washington was charged with illegal use of a weapon and contained his fingerprints on the back of the bill taken on the date of conviction. The date of the offense was August 20, 1995. Exhibit S-2 consisted of the minutes from the Caddo Parish clerk’s office in docket number 176,-683, showing that on October 5, 1995, Washington was represented by counsel, pled guilty to one count of illegal use of a weapon and was sentenced to one year’s imprisonment at hard labor. As to both of [7these evidentiary offerings, counsel for Washington responded, “No objection, Your Honor.”
After introduction of similar evidence of the other felonies of which Washington had been convicted, Sergeant Owen McDonnell (“McDonnell”) was qualified as a fingerprint expert. In open court, McDonnell took Washington’s fingerprints on a card which was offered into evidence as Exhibit S-7. McDonnell then matched the fingerprints on Exhibit S-l and the other bills of information with the fingerprints on Exhibit S-7. Washington’s counsel did not object to the fingerprint exhibits.
After a cross-examination of McDonnell by Washington’s counsel, and with no argument from defense counsel, the matter was submitted to the court. The court then ruled, adjudicating Washington a fourth felony offender, to which defense counsel objected.
In State v. Shelton, 621 So.2d 769 (La.1993), the supreme court explained the shifting burden of proof in an habitual offender proceeding:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State....
Id. at 779.
In this instance, Washington denied the allegation of the bill of information by pleading not guilty to the habitual offender bill. It was then|sthe state’s burden to (1) prove the existence of the prior guilty pleas and (2) that Washington was represented by counsel.
Our review of the transcript of the multiple offender hearing and court minutes of prior convictions offered into evidence at the multiple offender hearing indicates that the state used fingerprint evidence and expert testimony on that evidence to show that Washington was the same as the person charged by the previous bills of information and convicted by the guilty pleas. The court minutes reflect that Washington was represented by counsel in each case.
The state having met its burden, it was incumbent upon the defense to produce some evidence of an infringement upon Washington’s rights or a procedural irregularity. Although Washington filed a motion to quash the fourth felony habitual offender bill, the motion simply alleged that the state could not establish that the plea was taken in compliance with Boykin. The motion acknowledged that Washington was advised of his rights per Boykin, but did not allege any infirmity in those *1211 proceedings. Defense counsel then withdrew the motion for reasons not apparent from the record. However, we note that the state did supply, by a supplemental discovery response, the court minutes and transcript of an additional guilty plea felony conviction of Washington that could have been used for the habitual offender proceeding.
The court minutes reflect that Washington was advised of his rights under Boy-kin. When the minutes were introduced at the multiple offender hearing, Washington did not object to their introduction regarding any of the guilty pleas, thereby distinguishing the case from Jeffers, supra; State v. Wade, 36,295 (La.App.2d Cir.10/23/02), 832 So.2d 977, writ denied, 2002-2875 (La.04/04/03), 840 So.2d 1213. Washington offered no affirmative evidence showing any infringement of his rights or procedural irregularity in response to the court minutes. State v. O’Neal, 34,814 (La.App.2d Cir.10/12/01), 795 So.2d 1292. Thus, the court was entitled to find that the state met the initial burden by proving Washington’s guilty plea on September 23, 1986 was informed and voluntary and made with an articulated waiver of the three Boykin rights. Shelton, supra. See also, State v. Green, 36,741 (La.App.2d Cir.03/05/03), 839 So.2d 970.
The second part of Washington’s assignment of error number one is that the state failed to prove that the ten-year “cleansing period” between the 1986 conviction and the current 2001 conviction had not lapsed, citing State v. Ignot, 29,745 (La.App.2d Cir.09/24/97), 701 So.2d 1001, writ denied, 1999-0336 (La.06/18/99), 745 So.2d 618, for the proposition that the state’s failure to prove Washington’s date of discharge and that the “cleansing period” has not expired is' error patent.
Louisiana R.S. 15:529.1(B) & (C) provide:
B. It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime.
C. This Section shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as | ^provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods.
Since this Court’s ruling in Ignot, supra, the Louisiana Supreme Court has admonished the courts that the use of the term “cleansing period” is not correct, and that the only appropriate determination of a time limitation period is the time between the current conviction and the next previous conviction. State v. Everett, 00-2998 (La.05/14/02), 816 So.2d 1272 at 1276-77.
Applying the holding in Everett, supra, to the case sub judice, the present conviction was in 2001. The last conviction prior to that was in 1995, a period of less than ten years. As a result, Washington was properly determined to be a habitual offender, and all of his prior felony convictions could be used to determine his status. The trial court was correct to find that Washington was a fourth felony of *1212 fender. The state proved, beyond a reasonable doubt, every essential element of the habitual offender bill under La. R.S. 15:529.1. Shelton, supra; Everett, supra; O’Neal, supra.
In assignment of error number two, Washington argues that although the sentence falls within the statutory limits, it may violate his constitutional right against excessive punishment.
The state argues the Habitual Offender Law is constitutional in its entirety, and the mandatory sentence is also constitutional.
Louisiana R.S. 15:529.1(A)(2)(c)(ii), as in effect in 2001, provides:
If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or |nas a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
When, as here, a defendant’s motion for reconsideration urges merely that a sentence is excessive, he is relegated to a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.02/25/98), 707 So.2d 164. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992).
A sentence is considered grossly disproportionate to the offense if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. La. Const, art. I, § 20. The definition of criminal conduct and the provisions of penalties for such conduct are purely legislative functions. State v. Carlos Johnson, 31,448 (La.App.2d Cir.03/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653. Pursuant to this function, the legislature enacted the habitual offender statute which has been held, on numerous occasions, to be constitutional. State v. Walter Johnson, 97-1906 (La.03/04/98), 709 So.2d 672. Since that statute in its entirety is constitutional, the minimum sentences it imposes on repeat offenders are presumed constitutional. Id.
In order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and | ^convincingly show that he is exceptional, which, in this context, means that because of unusual circumstances, the defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Carlos Johnson, supra. Additionally, in determining whether a defendant has met this burden, the trial judge must consider that the goals of the Habitual Offender Law are to deter and punish recidivism. Id. Finally, it must be emphasized that the departure downward from the minimum sentence prescribed under the Habitual Offender Law should occur only in rare instances. Id.
Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court’s compliance with La.C.Cr.P. art. 894.1 is not required. State v. Gay, 34,371 (La.App.2d Cir.04/04/01), 784 So.2d 714; State v. Owens, 32,642 (La.App.2d Cir.10/27/99), 743 So.2d 890, writ denied, 2000-0438 (La.09/29/00), 769 So.2d 553. It would be an exercise in futility -for the trial court to *1213 discuss the factors enumerated in Article 894.1 when the court has no discretion in sentencing a defendant. Carlos Johnson, supra.
Although in State v. Dorthey, 623 So.2d 1276 (La.1993), the court found that a punishment required by statute can be shown to be an excessive punishment, the appellate courts of this state have recognized that declaring a sentence under the Habitual Offender Law constitutionally excessive should be a rare act, not a commonplace practice. As this Court stated in State v. Ponsell, 33,543 (La.App.2d Cir.08/23/00), 766 So.2d 678, 685, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490:
... Although, in State v. Dorthey, supra, the Louisiana Supreme Court stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive.... (Citations omitted.)
Prior to imposing sentence, the trial court reviewed a presentence investigation report and considered the facts of the case. Washington had two witnesses testify on his behalf, but the trial court noted that he was a fourth felony offender, and the life sentence was mandatory. In reviewing the harm done to society, the evidence shows that Washington’s actions in the current conviction resulted in the shooting of two victims and that he threatened several others. His criminal record is one of multiple burglaries and violence involving firearms.
After close scrutiny of the record, this Court cannot say that Washington has met his burden of proof to show that he is the exceptional defendant for whom downward departure from the mandatory statutory minimum life sentence is required. This assignment is, therefore, without merit.
CONCLUSION
For the foregoing reasons, Washington’s convictions and sentences are affirmed.
AFFIRMED.
BROWN, C.J., concurs with written reasons.

. The first multiple-offender bill incorrectly alleged that the conviction occurred on May 26, 1989 rather than September 22, 1986, the actual date of the guilty plea. A corrected, amended bill was filed on May 9, 2002.