Judgment rendered January 11, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,871-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TRABILLION HAWTHORNE                        Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 361,835

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Edward K. Bauman

JAMES E. STEWART, SR.                    Counsel for Appellee
District Attorney

REBECCA ARMAND EDWARDS
BRITTANY B. ARVIE
Assistant District Attorneys

* * * * *

Before PITMAN, THOMPSON, and HUNTER, JJ.

**THOMPSON, J.**

Trabillion Hawthorne was convicted of armed robbery and was adjudicated a second felony habitual offender. This court affirmed his conviction and habitual offender adjudication, but vacated his original illegally lenient sentence and remanded the matter to the trial court for resentencing. At his resentencing hearing, Hawthorne requested a downward deviation from the mandatory minimum sentence of 49½ years. At the conclusion of his resentencing hearing, the trial court sentenced him to the mandatory minimum sentence of 49½ years at hard labor, without benefit of parole, probation, or suspension of sentence. Hawthorne now appeals his sentence, arguing that the trial court erred by failing to conduct a hearing on his motion to reconsider sentence, mistakenly believed it lacked the discretion to deviate downward from the mandatory minimum sentence, and that his sentence is unconstitutionally excessive. We affirm his conviction and sentence.

## FACTUAL BACKGROUND

The facts of this case were previously set forth in *State v. Hawthorne*, 53,932 (La. App. 2 Cir. 9/22/21), 327 So. 3d 606, *writ denied*, 21-01710 (La. 1/12/22), 330 So. 3d 618, as follows:

> On the morning of September 28, 2016, Deborah Coleman and LaToya Taylor arrived for work at the Wyndham Garden hotel located on East 70th Street in Shreveport, Louisiana. Coleman was the general manager of the hotel. Taylor was the front desk manager.
>
> Surveillance video from several cameras at the hotel captured the following incident. At approximately 7:28 a.m., a dark-skinned male wearing a dark hoodie and gloves entered the hotel through a side entrance. He approached Coleman at the check-in counter, pointed a silver revolver at her, and handed a plastic bag to her. Taylor was standing nearby at her work area at the time. Both women opened their cash drawers. Because

Coleman's drawer was empty, she pointed to Taylor, who had a drawer containing cash. The suspect moved to the counter area across from Taylor and pointed the revolver at her as she handed cash and coin rolls to him. The suspect then fled from the hotel through the side entrance.

Anthony Moore, a hotel employee who witnessed the robbery, watched the suspect leave the hotel, run across the parking lot, and then go behind a nearby business. Moore thought the suspect threw something in a dumpster behind the business. Moore observed the suspect run across a street to the Haystack Apartments complex before losing sight of him.

Officers from the Shreveport Police Department ("SPD") who were called to the scene were advised that the suspect was a black male about 5'9" with a slender build and wearing a hoodie jacket, black pants, and gloves. Nothing was found in the dumpster behind the restaurant. A police K-9 unit tracked a suspected car but it did not amount to anything. A suspect was not developed that day. A few days later, a detective received a tip about an individual, but that individual did not resemble the robber on the surveillance video.

Two years later, in October of 2018, Wyosha Scott, who was the former girlfriend of Hawthorne, posted a photo of Hawthorne on Facebook next to a photo of the suspect from the Wyndham robbery. This information was forwarded to Cody Roy, an investigator with SPD's armed robbery unit. After Roy found a photo of Hawthorne and compared it to the video, he thought Hawthorne was the suspect.

On October 16, 2018, Roy obtained an arrest warrant for Hawthorne, who was taken into custody on that date. Hawthorne told Roy that he was living in the Haystack Apartments on September 28, 2016. Using a law enforcement database for pawned items, Roy found that Hawthorne had sold a chrome revolver two months after the robbery. A photo lineup was shown to Coleman, who identified Hawthorne as the person who had robbed her.

**PROCEDURAL HISTORY**

On November 14, 2018, a bill of information was filed charging Hawthorne with armed robbery. On January 28, 2020, trial was held, and Hawthorne was convicted by a unanimous jury of armed robbery.

On June 25, 2020, a habitual offender bill was filed. With a prior felony conviction for purse snatching in December 2011, Hawthorne was

2

determined to be a second felony offender. He was sentenced to 33 years at hard labor, without benefit of parole, probation, or suspension of sentence. Hawthorne appealed his conviction. On appeal, this Court determined that Hawthorne's original habitual offender sentence of 33 years was illegally lenient. This Court affirmed the conviction and habitual offender adjudication, but vacated his sentence and remanded it to the trial court for resentencing under the habitual offender statute in effect at the time he committed the armed robbery. *Hawthorne, supra.*

On November 29, 2021, a resentencing hearing was held. The trial judge asked defense counsel whether he had any facts regarding mitigating factors to present. Counsel for Hawthorne made a brief statement, noting that Hawthorne was a young man, age 23, when he committed the armed robbery. Counsel noted that the original sentencing judge's calculations were incorrect, and the mandatory minimum is higher than the sentence that was imposed after trial, but argued that the original sentence was reasonable and more appropriate under the particular circumstances. Counsel argued that imposing the mandatory minimum sentence or more would place Hawthorne in jail until he was 75 years old and stated: "I would ask that you deviate down and stay with the 33-year sentence."

Hawthorne also spoke on his own behalf at the resentencing hearing. He stated: "Well, I've got a family that's waiting for me. I got kids. I just want them to see me do better. I became a better man. I became a man of God. And I can't do 49 years, 33 years. I just ask that you have mercy on me."

The trial judge noted the appropriate sentence range for Hawthorne as a second felony offender, pursuant to La. R.S. 15:529.1(A)(1), is not less

3

than 49½ years and not more than 198 years. The trial judge also noted that he considered both mitigating and aggravating factors enumerated in La. C. Cr. P. art. 894.1, and found the following aggravating circumstances: Hawthorne knowingly created a risk of death or great bodily harm to more than one person, he used actual violence in the commission of the offense, and he used a firearm in the commission of the armed robbery. The trial judge did not find any mitigating circumstances.

The trial judge sentenced Hawthorne to 49½ years at hard labor, without benefit of probation, parole, or suspension of sentence, with credit for time served. The trial judge stated: "[t]hat is the minimum I can give you, so that's where I am bound by the written law to start. So I give you 49½ years." This appeal followed.

## LAW AND ARGUMENT

On appeal, Hawthorne asserts three assignments of error:

**Assignment of Error No. 1: The trial court failed to conduct a hearing to determine if the minimum sentence imposed was constitutionally excessive when raised by Hawthorne in his motion to reconsider sentence.**

Hawthorne argues that the trial court erred by failing to conduct a hearing on his request for a downward departure from the mandatory minimum habitual offender sentence. Hawthorne argues that while deviations below the mandatory minimum are rare, when judges find a punishment excessive, they have "the option, indeed the duty, to reduce such a sentence to one that would not be constitutionally excessive." *State v. Dorthey,* 623 So. 2d 1276 (La. 1993). Hawthorne asserts that without a Presentence Investigation Report (PSI) or a hearing on his motion to reconsider sentence, the trial court was without any evidence to determine

4

whether his sentence was unconstitutionally excessive or whether a downward departure was warranted. We disagree.

Downward departure from a mandatory minimum sentence may occur in rare circumstances if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case. *State v. Burns*, 53,920 (La. App. 2 Cir. 6/30/21), 322 So. 3d 928, *writ denied,* 21-0112 (La. 11/23/21), 328 So. 3d 78; *State v. Nabors*, 53,357 (La. App. 2 Cir. 4/22/20), 295 So. 3d 974, *writ denied*, 20-00709 (La. 10/6/20), 302 So. 3d 527; *State v. Chandler*, 41,063 (La. App. 2 Cir. 9/8/06), 939 So. 2d 574, 585, *writ denied*, 06-2554 (La. 5/11/07), 955 So. 2d 1277, *citing State v. Johnson*, 97-1906 (La. 3/4/98), 709 So. 2d 672.

In *Johnson, supra*, the supreme court explained:

> [I]t is apparent that the Legislature's determination of an appropriate minimum sentence should be afforded great deference by the judiciary. This does not mean, however, that the judiciary is without authority to pronounce a constitutional sentence if it determines that a mandatory minimum sentence is excessive in a particular case. Instead, we have held that courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution, although it falls within the statutory limits provided by the Legislature. *State v. Sepulvado*, 367 So. 2d 762, 767 (La. 1979). In *Dorthey, supra*, this Court recognized that this power extends to the minimum sentences mandated by the Habitual Offender Law. *Id.* at 1280-81. However, this power should be exercised only when the court is clearly and firmly convinced that the minimum sentence is excessive.
> ....
> A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. *Dorthey, supra* at 1281 (Marcus, J., concurring); *Young*, *supra*. A court may only depart from the minimum sentence if it finds that there is clear and convincing

evidence in the particular case before it which would rebut this presumption of constitutionality.

La. C. Cr. P. art. 881.1(D) provides:

The trial court may deny a motion to reconsider sentence without a hearing, but may not grant a motion to reconsider without a contradictory hearing. If the court denies the motion without a hearing, the party who made or filed the motion may proffer the evidence it would have offered in support of the motion.

Thus, a trial court is not required to conduct a hearing when it denies the defendant's motion to reconsider sentence. *State v. Williams*, 46,468 (La. App. 2 Cir. 9/21/11), 72 So. 3d 966; *State v. Vance*, 45,250 (La. App. 2d Cir. 5/19/10), 36 So. 3d 1152.

We find that Hawthorne essentially participated in a *Dorthey* hearing at his resentencing hearing, following this Court's determination on his prior appeal that his 33-year sentence was illegally lenient. At the resentencing hearing, Hawthorne specifically requested a downward departure from the mandatory minimum, in accordance with *Dorthey, supra*. Upon hearing the request and arguments in support of his position, the trial court still found that Hawthorne failed to show any basis to support a finding that the mandatory minimum sentence is unconstitutionally excessive. Hawthorne did not provide clear and convincing evidence that he is an exceptional defendant. Hawthorne was convicted by a unanimous jury of committing an armed robbery in a hotel lobby, by threatening two employees with a firearm and taking money from the hotel's register. He is not a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense or the culpability of the offender, such that a downward departure is warranted. This assignment of error is without merit.

6

**Assignment of Error No. 2: The trial court was of the erroneous view it was without the authority to deviate from the statutory minimum provided by La. R.S. 15:529.1.**

Hawthorne argues that the trial court believed it lacked authority to deviate from the mandatory minimum sentence. Hawthorne contends that the resentencing judge held the erroneous view that he must be sentenced to hard labor for not less than 49½ years and for not more than 198 years, without any ability to deviate downward in the event he found the mandatory minimum to be unconstitutionally excessive. He argues that the trial judge should not have denied the motion to reconsider sentence without a hearing.

Hawthorne cites Fourth Circuit jurisprudence in support of his argument that the trial court should have conducted a hearing on his motion to reconsider sentence and that it erroneously believed it was without authority to deviate from the mandatory minimum sentence. In *State v. Pernell*, 13-0180 (La. App. 4 Cir. 10/2/13), 127 So. 3d 18, *writ denied*, 13-2547 (La. 4/4/14), 135 So. 3d 640, the Fourth Circuit found error patent due to the trial court's failure to rule on an outstanding motion to reconsider a mandatory life sentence imposed for the defendant's second degree murder conviction. The Fourth Circuit remanded the matter with specific instructions for the trial court to hold a hearing on the motion to reconsider sentence under the criteria established in *Sepulvado*, *supra* and *Johnson*, *supra.* Contrary to the specific instruction to hold a hearing, the trial court on remand summarily denied the motion reconsider sentence. The trial court believed that, because the second degree murder statute provided only one penalty (mandatory life sentence), it had no discretion to review the sentence for excessiveness. *State v. Pernell (Pernell II),* 14-0678 (La. App. 4 Cir.

10/15/14), 151 So. 3d 940. Finding that reasoning to be legal error, the Fourth Circuit again remanded the matter for a full evidentiary hearing on the motion to reconsider sentence.

Unlike the *Pernell* cases, the instant matter does not involve a pending motion to reconsider sentence that the trial court failed to rule on prior to an appeal.[1] Further, Hawthorne had a hearing at resentencing where he availed himself of the opportunity to argue for a downward departure from the mandatory minimum sentence. The resentencing judge did not express the mistaken belief that he was without authority to deviate downward from the mandatory minimum sentence. He did not give any indication that he had misgivings about imposing the mandated minimum sentence. Rather, he specifically noted that he found no mitigating factors that might call into question the constitutionality of the mandatory minimum sentence of 49½ years. Finding an absence of sufficient justification to deviate from the sentencing range, the court imposed the minimum sentence available to it. This assignment of error is without merit.

**Assignment of Error No. 3: The minimum sentence under the habitual offender law of 49½ years at hard labor without benefits is constitutionally excessive.**

Hawthorne argues that Louisiana's judiciary maintains the distinct responsibility of reviewing sentences imposed in criminal cases for constitutional excessiveness. Hawthorne argues that no PSI was ordered by the court, and no mitigating circumstances were presented on his behalf because he was denied a hearing on his motion to reconsider sentence. Therefore, he argues that this Court does not have a complete record to

---

[1] *See also, State v. Small,* 13-1334 (La. App. 4 Cir. 8/27/14), 147 So. 3d 1274, *writ denied,* 14-1930 (La. 4/24/15), 169 So. 3d 354.

8

review to determine whether he is an exceptional case and his sentence is excessive.

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith,* 01-2574 (La. 1/14/03), 839 So. 2d 1; *Dorthey, supra*; *State v. Capers,* 43,743 (La. App. 2d Cir.12/3/08), 998 So. 2d 885, *writ denied,* 09-0148 (La. 10/2/09), 18 So. 3d 102.

A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *Capers, supra.*

Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La. C. Cr. P. art. 894.1 is not required. It would be an exercise in futility for the trial court to discuss the factors enumerated in Article 894.1 when the court has no discretion in sentencing a defendant. *State v. Washington,* 37,321 (La. App. 2d Cir. 8/20/03), 852 So. 2d 1206, *writ denied,* 03-2652 (La. 5/14/04), 872 So. 2d 510.

Since the Habitual Offender Law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. *State v. Johnson,* 97-1906 (La. 3/4/98), 709 So. 2d 672; *State v. Bates,* 37,282 (La. App. 2 Cir.10/16/03), 859 So. 2d 841, *writ denied,* 04-0141 (La. 5/21/04), 874 So. 2d 173. The legislature's determination of an appropriate minimum sentence should be afforded great deference by the judiciary. *Johnson, supra; Capers, supra.* Courts have the power to declare a sentence excessive under La. Const. art. I, § 20, although

9

it falls within the statutory limits provided by the legislature. This power extends to the minimum sentences mandated by the Habitual Offender Law. However, this power should be exercised only when the court is clearly and firmly convinced that the minimum sentence is excessive. *Johnson, supra; Capers, supra.*

A trial court may reduce a defendant's sentence to one not unconstitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment," or is nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime." *Johnson, supra.* A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. *Johnson, supra; State v. Lindsey,* 99-3302 (La. 10/17/00), 770 So. 2d 339; *State v. Roland*, 49,660 (La. App. 2 Cir. 2/27/15), 162 So. 3d 558, 568, *writ denied,* 2015-0596 (La. 2/19/16), 186 So. 3d 1174.

There is nothing in the record to show that Hawthorne satisfied or could satisfy his burden of showing clearly and convincingly that the mandatory minimum sentence is unconstitutionally excessive in this case. There is no requirement that the sentencing court order a PSI, and a defendant is not entitled to one by right. La. C. Cr. P. art. 875; *State v. Barrett*, 51,921, p. 10 (La. App. 2 Cir. 4/11/18), 247 So. 3d 164, 171. Additionally, because the trial court imposed the mandatory minimum, it is not required to justify that sentence in accordance with La. C. Cr. P. art.

10

894.1. Despite this, the trial court did consider the factors provided in Article 894.1, and noted multiple aggravating circumstances in this case, including violent threats to two individuals with the use of a firearm. The trial court did not find any mitigating circumstances.

The trial court heard Hawthorne's argument for a downward deviation, as well as his own plea for mercy on the basis that he has a family and is endeavoring to become a better man. Notwithstanding, Hawthorne failed to establish unusual circumstances that clearly and convincingly showed him to be exceptional. Hawthorne's sentence is presumed constitutional, and he failed to rebut that presumption. His sentence of 49½ years, the minimum mandatory sentence, is not constitutionally excessive. This assignment of error is likewise without merit.

## CONCLUSION

For the foregoing reasons, we affirm Trabillion Hawthorne's conviction and sentence.

**AFFIRMED.**

11