## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 19-43


**STATE OF LOUISIANA**

**VERSUS**

**WILL ANTONIO CELESTINE**


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 20529-17
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell,
and John E. Conery, Judges.


**AFFIRMED.**

John Foster DeRosier, District Attorney
Fourteenth Judicial District Court
P. O. Box 3206
Lake Charles, LA 70602-3206
(337) 437-3400
COUNSEL FOR APPELLEE:
        State of Louisiana

Mary Constance Hanes
P.O. Box 4015
New Orleans, LA 70178
(504) 866-6652
COUNSEL FOR DEFENDANT/APPELLANT:
        Will Antonio Celestine

Jeffrey M. Landry, Attorney General
J. Taylor Gray, Assistant Attorney General
P.O. Box 94005
Baton Rouge, LA 70804
(225) 326-6200
COUNSEL FOR OTHER APPELLEE:
        Attorney General of the State of Louisiana

**EZELL, Judge.**

Defendant, Will Antonio Celestine, was charged by bill of information filed on November 17, 2017, as a fourth habitual offender, a violation of La.R.S. 15:529.1. On January 8, 2018, Defendant was adjudicated a fourth felony offender for the offense of attempted illegal use of a weapon, a violation of La.R.S. 14:27 and La.R.S. 14:94, and sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence.

On July 27, 2018, Defendant filed a "Notice of Appeal" and "Motion for Appeal." The motion for appeal was granted. Defendant is now before this court asserting trial counsel rendered ineffective assistance at sentencing for failing to file a motion to reconsider and/or request a downward departure from the sentence of life without parole for attempted illegal use of a weapon. He also alleges his life sentence is excessive.

## FACTS

Defendant was convicted of attempted illegal use of a weapon in trial court docket number 16636-15 on November 15, 2017, and was subsequently adjudicated and sentenced as a habitual offender in trial court docket number 20529-17. The underlying offense occurred on May 16, 2015.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

In his first assignment of error, Defendant contends trial counsel rendered ineffective assistance at sentencing because he failed to file a motion to reconsider

Defendant's sentence and/or seek a downward departure from the mandatory life sentence, which is to be served without benefit of parole. In his second assignment of error, Defendant contends his sentence is excessive. Inasmuch as these two assignments of error pertain to Defendant's sentence, we will address them collectively.

At the habitual offender hearing, the State set forth Defendant's prior convictions as follows:

16636-15 is the incident conviction wherein he was convicted of one count attempted illegal use of [a] dangerous instrumentality, one count of firearm by a felon, one count of unauthorized entry of an inhabited dwelling. That conviction was on November 16th, 2017.

26093-13 was one count of obscenity wherein he was sentenced to one year parish prison on February 26th, 2014.

And 39274-11 that was one count of attempted possession of a firearm by a convicted felon, and he was sentenced to six years department of corrections on February 26th, 2014.

14206-09 was one count of theft over $500 wherein he was sentenced to five years DOC. That was suspended. He was placed on five years active supervised probation on November 3rd, 2009. That probation was revoked on October 28th, 2011. He was ordered to serve the original five years DOC sentence.

In 16851-07 it was one count of attempted simple escape. He was sentenced to serve three months parish prison on January 28th, 2008.

In 6669-07 was one count of theft over [$]500. He was sentenced to four years DOC on January 28th, 2008.

In 10648-05 was one count of possession with intent to distribute CDS II. He was sentenced to four years department of corrections, suspended, three years active supervised probation wherein on November 17th, 2005, that probation was also revoked on January 28th, 2008. He was ordered to serve four years DOC.

In 17264-05 one count of aggravated flight wherein he was sentenced to one year DOC. It was suspended. He was placed on three years active supervised probation. He was also convicted on -- in that matter of illegal possession of stolen things over [$]500. He was

2

sentenced in that matter to four years DOC. It was suspended. He was placed on two years active supervised probation. All of that occurred on March 9th, 2005.

He was also revoked on January 28th, 2008, and sentenced to serve four years department of corrections and one year department of corrections concurrent on January 28th, 2008.

Defendant was then adjudicated a fourth felony offender.

The State subsequently called Don Dixon, the Lake Charles Chief of Police, to testify. Chief Dixon testified he had dealt with Defendant for sixteen years.[1] He discussed Defendant's escape from "JDC," indicating a manhunt ensued. Chief Dixon considered Defendant to be "the No. 1 menace to society since [he'd] been chief of police . . . ." According to Chief Dixon, Defendant's last arrest cost $36,983.75 in overtime pay. Additionally, Defendant had thirty-eight criminal files with law enforcement agencies.

Thereafter, the trial court stated it did not see any reason to address the sentencing guidelines because the penalty was mandatory. After the State indicated the trial court should address the sentencing guidelines, the court discussed them as follows:

It says, when the defendant has been convicted of a felony, the court shall impose a sentence of incarceration if any of the following occurs:

There's an undue risk during a period of a suspended sentence he would commit another crime.

Historically it has been established that he has been convicted of offenses as well as charged with a number of offenses. The court answers that in the affirmative based on the totality of what has been presented here today.

---

[1]According to the habitual offender bill of information, Defendant was twenty-nine years old on the date he committed the underlying offense.

Is he in need of correctional treatment or custodial environment that can [be] provide[d] most effectively by his commitment to an institution?

Again, with the totality of the CDS significant charges as well as his failed opportunities on probation and the recent conviction for a violent offense and the prior conviction of a violent offense, the court would find that he is definitely in need of custodial commitment.

Would any lesser sentence deprecate the seriousness of the crime?

As indicated from the totality, the court would answer that also in the affirmative because of his history, crimes of violence and habitual involvement with the criminal justice system.

In looking at this application of aggravating or mitigating, offences [sic] that are considered violent, I would find that those -- that conduct manifests direct cruelty to victims, should know that the victims are particularly vulnerable or incapable of resistance, offenses in which it has appeared that he has used weapons or attempted to use weapons, indicate that he is more familiar with those individuals that they were aimed at. The court cannot say it was extreme youth-advanced age, disability, or ill-health, but whether they were -- regardless if they were not armed and he was and went after those individuals. That would be significant.

Has he offered or received something of valve [sic] for the commission?

I have thefts over [$]500 on occasion, which would indicate that's also in the affirmative.

Has he used his position to facilitate the commission?

The court does not have any information with regard to that. Has he created risk of death or great bodily harm to more than one person?

That's clear from the one case that the court was familiar with, the jury trial, in which a number of people were outside a residential area in which the crime for which he was -- attempted illegal use or possession of dangerous weapons as found by the jury, noting also that there were bullets found; and some testimony indicated that firearms was [sic] shot. However, he was only found guilty of attempted because it appeared that there was never a weapon that was retrieved as a result of his apprehension.

Subsequent to the offense, not applicable.

4

History of these events would result in injuries to individuals' economic losses?

As I indicated, they have some theft or taking charges. We have weapon charges. He did use dangerous -- well, this was attempted use of a dangerous weapon in -- but he was found to be in possession of a weapon by a convicted felon. So, yes, that's answered in the affirmative.

Also been involved in controlled dangerous substance offenses? As indicated, and those are significant as to possession with intent.

Other relevant aggravating circumstances, the manhunt, so to speak, that was implemented in order to take him into custody.

If I understand correctly, he has other charges pending, as we speak, does he not, Mr. Lampert?

**MR. LAMPERT:**

Yes, Your Honor.

**THE COURT:**

And those are also crimes of violence, are they not?

**MR. LAMPERT:**

Yes, Your Honor.

**THE COURT:**

The other relevant aggravating circumstances have to do again with the totality of what has been presented as to this 20529-17 and his, since young age, involvement with the criminal justice system.

In looking at mitigating circumstances, I find that his history, prior delinquencies, criminal activity to be more aggravating than mitigating. Is it unlikely to reoccur more aggravating than mitigating? Is he likely to respond affirmatively to probationary treatment more aggravating than mitigating?

I'm not certain if he has any children or anybody that he is responsible for.

Ms. Stagg?

**MS. STAGG:**

He does have -- you do have a child, right?

Yes, sir.

**THE COURT:**

Then it would appear that he may have a defendant [sic] or two that may be dependent upon him to some extent. The court does not have sufficient information, but obviously he acknowledges a child that he would be taking care of.

Any other relevant mitigating circumstances the court does not have before it.

At this time the defendant has previously been found guilty, as indicated, of attempted illegal use of dangerous weapon or instrumentalities in violation of 14:27 and 14:94, Section A. . . .

In viewing the 20529-17, in the finding by the court that the application of a fourth felony offender, with two of the prior felonies defined as crimes of violence or controlled dangerous substance with significant penalty, **the court is mandated at this time and finds it appropriate** that Mr. Will Antonio Celestine will be sentenced to imprisonment for the remainder of his natural life to be served without benefit of parole, probation, or suspension of sentence.

(Emphasis added.)

Defendant contends his life sentence is shocking. He notes the maximum sentence that could be imposed for attempted illegal use of a weapon in 2015 without enhancement was one year. La.R.S. 14:27(D)(3); La.R.S. 14:94(B). Additionally, as of August 1, 2017, the offense of illegal use of a weapon is no longer considered a crime of violence. La.R.S. 14:2(29) (repealed by 2017 La. Acts No. 281, § 3). Defendant further asserts he could have received a sentence as low as twenty years with no restriction on parole as a fourth felony offender had he committed the underlying offense on or after November 1, 2017, which was the

effective date of the 2017 amendments to La.R.S. 15:529.1. *See* 2017 La. Acts No. 257; 2017 La. Acts No. 282.

Defendant asserts that, for these reasons, he would have received a lesser sentence had trial counsel not performed deficiently at sentencing. Defendant asserts that trial counsel's failure to challenge his life sentence by filing a motion to reconsider sentence and/or a motion for downward departure has resulted in the waiver of his right to appeal the issue. Thus, he was denied effective assistance of counsel. Defendant notes the issue must be decided on direct review, as it is not cognizable in post-conviction proceedings.

Defendant cites *State v. Hayes*, 97-1526 (La.App. 1 Cir. 5/15/98), 712 So.2d 1019, in support of his claim. Therein, the defendant was convicted of theft by misappropriating or taking over $500. He was adjudicated a third felony offender and sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Counsel did not object to the sentence or file a motion to reconsider sentence. On appeal, the defendant asserted counsel was ineffective for his failure to do so. The defendant's criminal record contained the following convictions: "two thefts under $100, one theft over $100, several counts of issuing worthless checks, check forgery, simple robbery, and the instant offense, one theft of over $500." *Id.* at 1022. The simple robbery occurred when the defendant pushed a minor and stole his bicycle. None of the defendant's crimes involved a dangerous weapon. When addressing the ineffective assistance claim, the first circuit stated:

> But for the failure to object, the sentence would have been changed, if not in the district court, then on appeal. A sentence of life imprisonment for this defendant, at his age and with his record, is "disproportionate" to the harm done and shocks "one's sense of justice." [*State v.*] *Chaisson*, 507 So.2d [248] at 250 [(La.App. 1 Cir.

7

1987)]. The life imprisonment imposes an undue burden on the taxpayers of the state, who must feed, house, and clothe this defendant for life. Mr. Hayes is a tenacious theft [sic]. He obviously needs lengthy incarceration. However, a severe sentence, for example, one between ten and twenty years, would have met all of the societal goals of incarceration. All of Mr. Hayes' offenses combined cannot support a loss of liberty at age 34, for the rest of his life.

The failure to object to the life sentence was not a strategic decision or a discretionary call, under the circumstances here. On sentencing, counsel was not acting as the counsel required by the United States Constitution, Amendment 6. The failure to object or move for consideration waived not only defendant's constitutional right to a sentence that was not cruel and unusual punishment, but also denied Mr. Hayes his right to appeal, to seek redress for the denial of a constitutional right. The constitutionally deficient legal performance rendered "the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 113 S.Ct. at 844. Considering the seriousness of the failure to object at sentencing, and the prejudice suffered as a result, the denial of a constitutionally fair sentence and the right to appeal a life sentence, the defendant has established ineffective assistance of counsel. *See State v. Hamilton*, 92–2639 pp. 4–11 (La.7/1/97); 699 So.2d 29, 32–35, *cert. denied*, [522] U.S. [1124], 118 S.Ct. 1070, 140 L.Ed.2d 129 (1998). For these reasons, we vacate the sentence, and remand to the district court for re-sentencing. *See State v. Hamilton*, 92–2639 at p. 11; 699 So.2d at 35.

*Id.* at 1022-23. The State applied for certiorari with the supreme court, which was granted, and the matter was remanded to the court of appeal for reconsideration in light of *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672. *State v. Hayes*, 98-1603 (La. 12/11/98), 729 So.2d 584. On remand, the first circuit once again found the defendant's life sentence was excessive, as the thirty-four-year-old defendant returned sixty-nine percent of the approximately $1000 taken, the crime of violence involved the defendant pushing a minor and stealing his bicycle, none of the defendant's prior crimes involved a dangerous weapon, and the life sentence would impose an undue burden on taxpayers. *State v. Hayes*, 97-1526 (La.App. 1 Cir. 6/25/99), 739 So.2d 301, *writ denied*, 99-2136 (La. 6/16/00), 764 So.2d 955.

Based on the reasoning set forth in *Hayes*, 712 So.2d 1019, Defendant asserts there could have been no strategic reason for counsel not to file a motion to reconsider his sentence and/or request a downward departure challenging the imposition of his life sentence without parole. Defendant alleges counsel's performance was deficient and he was prejudiced by the deficiency because his claim of excessiveness has merit.

Defendant then addresses the excessiveness of his sentence. Defendant notes the underlying offense is punishable by a sentence of up to one year with or without hard labor. La.R.S. 14:27; La.R.S. 14:94. Moreover, at the time the offense was committed on May 16, 2015, La.R.S. 15:529.1(A) provided, in pertinent part:

> (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
>
> (a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or
>
> (b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

On or after November 1, 2017, La.R.S. 15:529.1(A) provided:

> (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then the following sentences apply:

9

(a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life.

(b) If the fourth felony and no prior felony is defined as a crime of violence under R.S. 14:2(B) or as a sex offense under R.S. 15:541, the person shall be imprisoned for not less than twenty years nor more than twice the longest possible sentence prescribed for a first conviction. If twice the possible sentence prescribed for a first conviction is less than twenty years, the person shall be imprisoned for twenty years.

(c) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), or a sex offense as defined in R.S. 15:541 when the victim is under the age of eighteen at the time of commission of the offense, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

Defendant's life sentence was based on convictions of attempted illegal use of a weapon, aggravated flight from an officer, and possession with intent to distribute cocaine. However, if the underlying offense had been committed on or after August 1, 2017, it could not be used as the basis for the habitual offender bill because it was no longer considered a crime of violence as of that date and could not be used to convert a one-year maximum sentence to a sentence of life without parole. Moreover, if Defendant had committed the current offense on or after November 1, 2017, he could not have received a mandatory life sentence as La.R.S. 15:529.1(A)(4)(c) does not list drug offenses or crimes punishable by imprisonment for twelve years or more as a basis for imposition of a life sentence without benefit of parole. Defendant would be subject to a sentence of twenty years to life and would be eligible for parole. La.R.S. 15:529.1(A)(4)(a).

Defendant notes the supreme court has said a defendant must be sentenced in accordance with the sentencing provision in effect at the time of the commission of the offense. *State v. Sugasti*, 01-3407 (La. 6/21/02), 820 So.2d 518. However,

in *State v. Clark*, 391 So.2d 1174 (La.1980), the supreme court noted a drastic change in penalty is relevant and should be taken into consideration when determining whether a sentence is excessive. Defendant notes the supreme court stated:

> Where there has been an ameliorative change in the penalty provision of a statute that takes effect after the date of the offense, but before trial or final judgment, it is the rule in this state that the penalty provision in effect at the time of the offense is the applicable provision. *State v. Dreaux*, 205 La. 387, 17 So.2d 559 (1944). See also *State v. Wright*, [384 So.2d 399 (La.1980)]; *State v. Paciera*, 290 So.2d 681, 687-88 (La.1974). However, as pointed out in *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859, 874 (1976) (Opinion of Justices Stewart, Powell and Stevens) "an assessment of contemporary values concerning the infliction of a challenged sanction is relevant to the application" of the Eighth Amendment's ban against cruel and unusual punishment. It is no less relevant to the inquiry of whether a particular penalty is excessive. And it has been acknowledged that legislative enactments provide an important means of ascertaining contemporary values. Id. at n. 19. Inherent in mitigatory changes in penalty provisions of an offense is a legislative determination that the present law is inappropriate, Comment, Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation: 121 U.Pa.L.Rev. 120, 138 (1972), and that the lesser penalty is sufficient to meet the legitimate ends of the criminal law. *In re Estrada*, 63 Cal.2d 740, 408 P.2d 948, 952, 48 Cal.Rptr. 172 (1965); *People v. Oliver*, 1 N.Y.2d 152, 134 N.E.2d 197, 201-02, 151 N.Y.S.2d 367, 373-74 (1956).

*Id.* at 1176 (footnote omitted).

Defendant also cites *State v. Priest*, 18-518 (La.App. 5 Cir. 2/6/19), 265 So.3d 993, *writ denied*, 19-418 (La. 5/20/19), 271 So.3d 201. Therein, the fifth circuit found the defendant's thirty-year sentence for possession of over 400 grams of methamphetamine was unconstitutionally excessive, noting defendant was homeless at the time of the incident and felt threatened and intimidated by other men involved in the crime, his prior convictions were not drug offenses and only one was a crime of violence, nothing in the record or the defendant's criminal past indicated he was a drug dealer or part of a drug distribution ring, and the

legislature had subsequently amended the sentencing range to lower the maximum penalty. The fifth circuit stated the following as part of its analysis:

> [I]f defendant had committed the instant offense approximately one year later, he would have been subject to a maximum sentence of only twenty years. In Acts 2017, No. 281, effective August 1, 2017, the Legislature amended the sentencing range for possession of over four hundred grams of methamphetamine by reducing it to a range of one to twenty years. At the same time, the Legislature also repealed Section (G) of La. R.S. 40:967 regarding the imposition of the restriction of benefits for the instant crime of conviction. While the amendments to La. R.S. 40:967 were not given retroactive effect, that does not mean this Court cannot consider the expression of legislative will at the time the amendment reducing the applicable penalties was passed. *See State v. Dixon*, 17-422 (La. App. 5 Cir. 3/14/18), 241 So.3d 514, 527 (dissent) (citing *State v. Jarreau*, 05-355 (La. App. 4 Cir. 12/14/05), 921 So.2d 155, 162-63, *writ denied*, 06-131 (La. 6/14/06), 929 So.2d 1267).

*Id.* at 1006. Defendant asserts that for the same reasons, this court should consider "the expression of legislative will when it amended La.R.S. 15:529.1(A)(4)."

The State asserts Defendant failed to offer any evidence to demonstrate his attorney's actions fell below an objective standard of reasonableness. The State argues the facts of the case indicate Defendant would not have received a lesser sentence. The State notes that although defense counsel erred in failing to object to the sentence and Defendant's appeal rights were technically waived, Defendant sustained no "ill effects." The State notes that a bare excessiveness review may be conducted in cases in which no objection is made or motion to reconsider sentence filed. The State argues the trial court did not abuse its discretion when imposing sentence as Defendant had numerous prior convictions, including violent crimes. Thus, Defendant's claim that counsel was ineffective for failing to file a motion to reconsider sentence lacks merit.

The State asserts Defendant failed to allege any evidence that would substantiate his claim that he is entitled to a downward departure from the statutory

minimum sentence as he failed to demonstrate that he is exceptional. The State additionally asserts there is no merit to Defendant's contention that his attorney provided ineffective assistance of counsel for failing to file a motion to reconsider or request a downward departure.

The State addresses Defendant's excessive sentence claim, noting in *State v. Washington*, 37,321 (La.App. 2 Cir. 8/20/03), 852 So.2d 1206, *writ denied*, 03-2652 (La. 5/14/04), 872 So.2d 510, the second circuit held the defendant's life sentence as a fourth felony offender for illegal use of a firearm was not excessive. The State further cites *State v. Lyles*, 18-283 (La.App. 5 Cir. 12/27/18), 263 So.3d 930, *writ granted*, 19-203 (La. 5/20/19), 270 So.3d 570. Therein, the defendant appealed his sentence of life imprisonment, arguing that he should have been sentenced under the 2017 amendments to La.R.S. 15:529.1, and, in the alternative, that his sentence was excessive. The fifth circuit addressed the issue, stating:

> While La. R.S. 15:529.1 was revised in 2017 by Acts 257 and 282, it is well settled law that habitual offender proceedings do not charge a separate crime, but merely constitute ancillary sentencing proceedings such that the punishment for a new conviction is enhanced, and jurisprudence, including that of this Court, has held that the sentence to be imposed is that in effect at the time of the commission of the offense. *See State v. Parker*, 03-924 (La. 4/14/04), 871 So.2d 317, 327 ("the punishment to be imposed on defendant, a habitual offender, is that provided by La. R.S. 15:529.1 as it existed on the date he committed the underlying offense."); *State v. Sugasti*, 01-3407 (La. 6/21/02), 820 So.2d 518, 522 ("Everyone is presumed to know the law, including the penalty provisions that apply. As such, those who engage in criminal activity must face the consequences of their actions, including the penalty provisions that apply as of the date of the offense."); *State v. Williams*, 03-571 (La. App. 5 Cir. 11/12/03), 862 So.2d 108, 119, *writ denied*, 04-0051 (La. 5/21/04), 874 So.2d 171 ("[T]his Court has consistently held that the date of the commission of the offense controls the penalty to be applied in multiple offender sentencing. From our earliest decisions on the subject until our more recent pronouncement, we have been unwavering on this issue.").

*Id.* at 936 (alteration in original). The fifth circuit also cited the 2018 addition of La.R.S. 15:529.1(K)(1), which states, "[N]otwithstanding any provision of law to the contrary, the court shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed." *Id.* The supreme court granted Lyles' writ of certiorari to determine "[w]hether petitioner's habitual offender adjudication and sentence are governed by R.S. 15:529.1 as it existed at the time of commission of his instant offense, as it was amended by 2017 La. Acts 282, or as it was amended by 2018 La. Acts 542." *State v. Lyles*, 270 So.3d 570.

The State avers the trial court found the life sentence appropriate. Additionally, the trial court did not abuse its broad sentencing discretion when imposing the sentence.

*Analysis*

Attempted illegal use of a weapon and aggravated flight from an officer were crimes of violence on May 16, 2015. La.R.S. 14:2(B)(29) and (39). Moreover, possession with intent to distribute cocaine is a drug offense. Thus, the mandatory penalty to be imposed after Defendant was adjudicated a fourth felony offender was life imprisonment without benefit of probation, parole, or suspension of sentence. La.R.S. 15:529.1(A)(4)(b).

Neither defense counsel nor Defendant requested a downward departure from the mandatory sentence, objected to the sentence imposed, or filed a motion to reconsider Defendant's sentence. Thus, under some jurisprudence, Defendant is precluded from appealing his sentence. *See State v. Bamburg*, 00-675 (La.App. 3 Cir. 11/2/00), 772 So.2d 356; *State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59; *State v. Duplantis*, 13-424 (La.App. 3 Cir. 11/27/13), 127 So.3d 143, *writ denied*, 14-283 (La.

14

9/19/14), 148 So.3d 949. This court has, however, previously reviewed claims of excessiveness where no motion to reconsider sentence was filed or objection made, performing a bare excessiveness review. *State v. Jackson*, 14-9 (La.App. 3 Cir. 6/18/14), 146 So.3d 631, *writ denied*, 14-1544 (La. 2/27/15), 159 So.3d 1066; *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111; *State v. Price*, 16-899 (La.App. 3 Cir. 4/5/17), 216 So.3d 304; *State v. Debarge*, 17-670 (La.App. 3 Cir. 2/7/18), 238 So.3d 491.

In this case, Defendant argues defense counsel was ineffective for failing to file a motion to reconsider sentence and/or request a downward departure. In *State v. Farry*, 16-211, pp. 2-3 (La.App. 3 Cir. 11/16/16), 207 So.3d 436, 438-39 (alterations in original), this court addressed a similar claim:

> In *State v. Christien*, 09-890, p. 7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701, the court explained in pertinent part:
>
>> A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains sufficient evidence to decide the issue, and the issue is raised by an assignment of error on appeal, it may be considered by the appellate court. *State v. Tapp*, 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804; *See also State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.
>
> In *State v. Cotton*, 09-2397 (La. 10/15/10), 45 So.3d 1030, the supreme court held that ineffective assistance of counsel claims regarding sentencing are precluded from review on post-conviction. The court wrote in pertinent part:
>
>> An [sic] habitual offender adjudication thus constitutes sentencing for purposes of [*State ex rel.*] *Melinie* [*v. State*, 93-1380 (La. 1/12/96), 665 So.2d 1172], and La.C.Cr.P. art. 930.3, which provides no vehicle for post-conviction consideration of claims arising out of habitual offender proceedings, as opposed to direct appeal of the conviction and sentence. La.C.Cr.P. art.

15

912(C)(1)(defendant may appeal from a judgment "which imposes sentence"). A fortiori, respondent's claim that he received ineffective assistance of counsel at his habitual offender adjudication is not cognizable on collateral review so long as the sentence imposed by the court falls within the range of the sentencing statutes. *Cf.* La.C.Cr.P. art. 882.

*Id.* at 1030-31. Furthermore, in *State v. Paulson*, 15-454, pp. 9-10 (La.App. 4 Cir. 9/30/15), 177 So.3d 360, 367, the court explained in pertinent part:

Generally, ineffective-assistance-of-counsel claims are more properly raised in an application for post-conviction relief where the district court can conduct a full evidentiary hearing on the matter, if one is warranted. *See State v. Leger*, 05-0011, p. 44 (La. 7/10/06), 936 So.2d 108, 142; *see also State v. Small*, 13-1334, p. 13 (La.App. 4 Cir. 8/27/14), 147 So.3d 1274, 1283. Nevertheless, where the record contains evidence sufficient to decide the issue, and it is raised on appeal by an assignment of error, courts may consider the issue in the interest of judicial economy. *See Leger*, 05-0011, p. 44, 936 So.2d at 142. A claim of ineffective assistance of counsel at sentencing, however, is not cognizable on collateral review, when, as here, the sentence imposed by the trial judge is within the authorized range of the sentencing statutes. *See State v. Thomas*, 08-2912 (La. 10/16/09), 19 So.3d 466 ("relator's claims that the court imposed an excessive sentence and *that he received ineffective assistance of counsel at sentencing* are not cognizable on collateral review") (emphasis added). The Louisiana Supreme Court has held that La. C.Cr.P. art. 930.3, which sets forth the grounds upon which post-conviction relief may be granted, "provides no basis for review of claims of excessiveness or other sentencing error post-conviction." *State ex rel. Melinie v. State*, 93-1380 (La. 1/12/96), 665 So.2d 1172; *see also State v. Cotton*, 09-2397, p. 2 (La. 10/15/10), 45 So.3d 1030, 1031 (per curiam) (claim that counsel rendered ineffective assistance at habitual offender adjudication is not cognizable on collateral review so long as sentence imposed falls within range of sentencing statute).

Therefore, because Mr. Paulson's ineffective-assistance-of-counsel-at-sentencing claim is not cognizable in a post-conviction proceeding, and because the record provides sufficient evidence to decide the issue, we must consider his ineffectiveness claim on

> direct review. *Cf. State v. Boyd*, 14-0408, pp. 8-9
> (La.App. 4 Cir. 2/11/15), 164 So.3d 259, 264 (finding
> ineffective-assistance-of-counsel-at-sentencing claim
> cognizable on direct review, but remanded for
> evidentiary hearing because record was insufficient to
> decide issue).

Because Defendant's ineffective assistance of counsel claims cannot be relegated to post-conviction relief and the record is sufficient to review the claims, we find Defendant's claims should be addressed in this appeal.

"In order to prove an attorney was ineffective, a defendant must show his attorney was deficient, and he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Farry*, 207 So.3d at 439. "Failure to file a motion to reconsider does not necessarily constitute ineffective assistance of counsel." *State v. Anderson*, 13-42, p. 11 (La.App. 3 Cir. 7/3/13), 116 So.3d 1045, 1053, *writ denied*, 13-1806 (La. 5/16/14), 139 So.3d 1019. "Defendant may have a basis to claim ineffective assistance if he can show a reasonable probability that but for defense counsel's error, his sentence would have been different." *Id.* Moreover, "unless Defendant can show a downward departure from the mandatory life sentence . . . was warranted, he cannot meet *Strickland's* prejudice test." *State v. Kight*, 18-974, p. 4 (La.App. 3 Cir. 6/5/19), 275 So.3d 26, 30.

In *State v. Johnson*, 97-1906, pp. 5-9 (La. 3/4/98), 709 So.2d 672, 675-77 (first and second alterations added), the supreme court discussed sentencing below the mandatory minimum sentence set forth by La.R.S. 15:529.1 as follows:

> The Legislature has sole authority under the Louisiana Constitution to define conduct as criminal and provide penalties for such conduct. La. Const. art. III, § I; *State v. Dorthey*, [623 So.2d 1276] at 1280 [(La.1993)]; *State v. Taylor*, 479 So.2d 339, 341 (La.1985). Acting pursuant to this authority, the Legislature passed the Habitual Offender Law. This Court, on numerous occasions, has held this

statute to be constitutional. *See, e.g., State v. Dorthey, supra*; *State v. Badon*, 338 So.2d 665, 670 (La.1976). Since the Habitual Offender Law in its entirety is constitutional, the minimum sentences it imposes upon multiple offenders are also presumed to be constitutional. *Dorthey, supra* at 1281 (Marcus, J., concurring); *State v. Young*, 94-1636 (La.App. 4th Cir. 10/26/95), 663 So.2d 525.

Given the above, it is apparent that the Legislature's determination of an appropriate minimum sentence should be afforded great deference by the judiciary. This does not mean, however, that the judiciary is without authority to pronounce a constitutional sentence if it determines that a mandatory minimum sentence is excessive in a particular case. Instead, we have held that courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution, although it falls within the statutory limits provided by the Legislature. *State v. Sepulvado*, 367 So.2d 762, 767 (La.1979). In *State v. Dorthey, supra*, this Court recognized that this power extends to the minimum sentences mandated by the Habitual Offender Law. *Id.* at 1280-81. However, this power should be exercised only when the court is clearly and firmly convinced that the minimum sentence is excessive.

. . . .

In *State v. Dorthey, supra*, this Court held that a trial court must reduce a defendant's sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law "makes no measurable contribution to acceptable goals of punishment", or is nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime." *Id.* at 1280-81. Finding a mandatory minimum sentence constitutionally excessive requires much more, though, than the mere utterance of the phrases above.

A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. *See State v. Dorthey, supra* at 1281 (Marcus, J., concurring); *State v. Young, supra*. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.

A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. LSA-R.S. 15:529.1 provides that persons adjudicated as third or fourth offenders

may receive a longer sentence if their instant or prior offense is defined as a "crime of violence" under LSA-R.S. 14:2(13). Thus the Legislature, with its power to define crimes and punishments, has already made a distinction in sentences between those who commit crimes of violence and those who do not. Under the Habitual Offender Law those third and fourth offenders who have a history of violent crime get longer sentences, while those who do not are allowed lesser sentences. So while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.

Instead, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:

> [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

*Young*, 94-1636 at pp. 5-6, 663 So.2d at 528 (Plotkin, J., concurring).

When determining whether the defendant has met his burden of proof by rebutting the presumption that the mandatory minimum sentence is constitutional, the trial judge must also keep in mind the goals of the Habitual Offender Law. Clearly, the major reasons the Legislature passed the Habitual Offender Law were to deter and punish recidivism. Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law. Given the Legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.

Finally, if a sentencing judge finds clear and convincing evidence which justifies a downward departure from the minimum sentence under the Habitual Offender Law, he is not free to sentence a defendant to whatever sentence he feels is appropriate under the circumstances. Instead, the judge must sentence the defendant to the longest sentence which is not constitutionally excessive. This requires a sentencing judge to articulate specific reasons why the sentence he

imposes instead of the statutory mandatory minimum is the longest sentence which is not excessive under the Louisiana Constitution. Requiring a sentencing judge to re-sentence a defendant in this manner is in keeping with the judiciary's responsibility to give as much deference as constitutionally possible to the Legislature's determination of the appropriate minimum sentence for a habitual offender.

We emphasize to sentencing judges that departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations. As Chief Justice Calogero noted in a prior case:

> The substantive power to define crimes and prescribe [sic] punishments lies in the legislative branch of government. [citation omitted]. Our decision in *State v. Dorthey*, 623 So.2d 1276 (La.1993), did not purport to grant a district court the power to usurp that legislative prerogative or to impose what the court believes is the most appropriate sentence for a particular offender in a particular case. *Dorthey* gives the district court the authority to depart from the mandatory minimum sentences provided by the legislature only in those relatively rare cases in which the punishment provided violates the prohibition of La. Const. art. I, § 20 against excessive sentences.

*State v. Hamilton*, 95-2462 at p. 1 (La.2/2/96), 666 So.2d 655, 656 (Calogero, C.J., concurring); *see also State v. Dorthey, supra* (Marcus, J., concurring) (noting that situations where sentencing courts should sentence defendants below the minimum mandated by the Habitual Offender Law are "rarely presented").

There is nothing particularly unusual about Defendant's circumstances that would justify a downward departure from the mandatory sentence under La.R.S. 15:529.1. Defendant's entire argument is based on the 2017 amendments to La.R.S. 15:529.1 and La.R.S. 14:2 and a comparison of the sentence he received with what he could have been sentenced to had he committed the underlying offense after the effective dates of those amendments. We find that argument is insufficient to prove Defendant is exceptional. *State v. Walker*, 04-1358 (La.App. 5 Cir. 4/26/05), 902 So.2d 526, *writ denied*, 05-2005 (La. 2/17/06), 924 So.2d

1014; *State v. Harris*, 02-873 (La.App. 5 Cir. 1/28/03), 839 So.2d 291, *writ denied*, 03-846 (La. 10/31/03), 857 So.2d 474; *State v. Jerome*, 03-126 (La.App. 5 Cir. 4/29/03), 845 So.2d 1194.

Furthermore, at the sentencing hearing the State presented Defendant's prior convictions and testimony from Chief Dixon regarding Defendant's propensity to commit crime. The trial court then addressed La.Code Crim.P. art. 894.1 and noted Defendant had one child. The court found the life sentence was mandated and "appropriate." Thus, it was not likely the trial court would have reduced Defendant's sentence had counsel filed a motion to reconsider sentence or requested a downward departure. The trial court could have been made aware in a motion to reconsider sentence that the sentencing provisions had been amended, which could be considered pursuant to *Clark*, 391 So.2d 1174. However, the *Clark* court reiterated the rule that the penalty provision in effect at the time of the offense is the applicable provision. Furthermore, *Clark* predates *Sugasti*, 820 So.2d 518, and its progeny. *State v. Tickles*, 18-221 (La.App. 1 Cir. 11/6/18) (unpublished opinion).

Life sentences for habitual offenders have been affirmed on appeal. In *State v. Lewis*, 576 So.2d 1106 (La.App. 3 Cir.), *writ denied*, 580 So.2d 669 (La.1991), the defendant was convicted of distribution of cocaine, adjudicated a fourth offender, and sentenced to life imprisonment. This court addressed the defendant's excessive sentence claim, stating:

> In the past, the Louisiana Supreme Court has upheld life sentences for fourth felony offenders. See *State v. Green*, 437 So.2d 302 (La.1983), *writ denied*, 443 So.2d 1121 (La.1984); *State v. Wheeler*, 450 So.2d 695 (La.App. 4 Cir.1984).

When defendant was sentenced, the trial judge said:

21

> "[t]he defendant was convicted of distribution of cocaine, an offense for which the law provides a penalty of not less than five, nor more than thirty years imprisonment. It has been demonstrated that he is a habitual felony offender for the fourth time. The record demonstrates that the defendant, since his first conviction in 1976, has never been a productive member of society, but continues to commit criminal offenses soon after his release from prison. Considering the provisions of the appropriate Articles, the Court will sentence the defendant to imprisonment for the rest of his natural life."

> The trial judge's remarks concerning defendant's propensity to commit crimes, along with the fact that La.R.S. 15:529.1A(3)(b) requires the judge to sentence defendant to life imprisonment is more than adequate to justify the sentence defendant received. Therefore, these assignments of error lack merit.

*Id.* at 1112 (alterations in original).

Defendant cited *Hayes*, 712 So.2d 1019, in support of his claims. In that case, the first circuit found the defendant's sentence was excessive. *Hayes* is distinguishable in that the Defendant herein has a more significant criminal history and more than one crime of violence.

Defendant failed to prove counsel was ineffective for failing to file a motion to reconsider sentence and/or request a downward departure from the mandatory life sentence without benefit of parole. Likewise, Defendant's sentence is not excessive. Accordingly, Defendant's sentence is affirmed.

**AFFIRMED.**